Curia, per Waedlaw, J.
This verdict may have been found upon the conclusion of the jury, formed from the evidence, that the defendant had not acted in good faith ; but even upon a contrary supposition, this court thinks it must stand. The promises of a master to a slave, are binding only in conscience and honor; at law, notwithstanding any such promise, that the slave shall have certain acquisitions, all the acquisitions of the slave in possession, are the property of the master. A dealing or trafficking with the slave concerning such acquisitions, without the license of the master, is as much contrary to our statutory regulations, as other unlicensed dealings with a slave. Sometimes an executed contract with a slave might transfer a title to a third person, upon the ground of the master’s implied consent; but an executory agreement with a slave, (not the agent of the master therein) can give no right of action, either to the slave or master. (See Fable vs. Brown. 2 Hill Ch. 378 ; Carmille vs. Carmille, 2 McM. 454 ; Inglesby vs. Beamer. (a) Then the $100 in Wil *426 liam’s possession, belonged to the plaintiff; the defendant violated the law in receiving it from him under a bargain ; or, to say the least, acted with great imprudence in resting his justification for dealing with the slave to such an amount, when the owner was near, upon the implied permission of the owner, and not obtaining express license. Such assent of the plaintiff as would make William her agent, cannot be presumed against the verdict; and the defendant must refund the $100, as money received in an unlawful transaction, wherein the plaintiff did not participate- — or as money received upon consideration of an agreement which the law regards as worthless.
The motion is therefore refused.
Richardson, O’Neall, Evans, ButleR and Feost, JJ. concurred

 Joseph S. Inglesby vs. Deidrick Beamer. This was a sum. pro. in trover for a batteau, tried in the City Court, in November, 1844. The batteau was built by a slave of the plaintiff, named Titus, on a lot in Charleston, occupied by the defendant. The defendant claimed the right to retain the batteau, under the lien of an account for seven or eight dollars due by Titus to the defendant, for money lent to buy materials for the batteau, and for materials and groceries furnished by the defendant to Titus. The batteau was proved to be worth $35 or $40.
The Recorder, in his report to the Court of Appeals, stated that he ruled as follows:
*426 ‘‘ There is no evidence, whatever, to give any lien for the grocery bill. Under the contradictory statements of the defendant’s witness, I felt constrained to reject belief in his pretence of the pledge of the boat, for the advances of cash. This left the remaining question : had the plaintiff established his right to recover the boat as owner?
“ Whatever chattels a slave acquires, he acquires for his master, and the master may maintain an action for them in the hands of a stranger. (Fable vs. Brown, 2 Hill Ch. 397.) A slave is incapable of holding property in his own right, and the possession ana title must be referred to the master. (Ib. 396), A master may maintain trespass for his slave’s property. (Hobson vs. Perry, 1 Hill, 277.)”
Decree for the plaintiff for $35.
The case came before the Court of Appeals, in January, 1845, when Richardson, J. delivered the opinion of the court.
The point of law m this case, is fully expounded and supported by the Judge’s report. The liability of the defendant to the plaintiff, for the boat built by his slave Titus, is evident; and the failure on the part of the defendant to shew that his credits to Titus were as credits to the plaintiff, or liens on the boat, are equally plain.
The motion is therefore dismissed.
O’Neall, Evans, Butler, Wardlaw and Frost, JJ. concurred.